# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| NEAL SCOTT, JR. ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 16 C 723 |
| v. ) | |
| ) | Magistrate Judge Sheila Finnegan |
| MENARD, INC., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Neal Scott, Jr. originally filed this one-count premises liability action against Defendant Menard, Inc. ("Menard") in the Circuit Court of Cook County. (Doc. 1-1). Menard being incorporated and principally located in Wisconsin and Plaintiff being a citizen of Illinois, Menard timely removed the action to this Court based on diversity jurisdiction. (Doc. 1). The parties later consented to the jurisdiction of a magistrate judge, and the case was reassigned to this Court. (Docs. 4, 11, 13).

Plaintiff alleges that he was injured in a Menard store due to Menard's negligence when he tripped over a pallet jack in an aisle near the cash registers while carrying a large, boxed item that he was there to purchase. (Doc. 1-1). Menard now moves for summary judgment, arguing that the pallet jack was an "open and obvious" condition from which it owed no duty to protect Plaintiff, and that its actions were not the proximate cause of the accident. (Doc. 31). As explained below, however, Plaintiff's assertion of the "distraction exception" to the "open and obvious" rule, and various disputed issues of fact, preclude a ruling in Menard's favor on either of these grounds at this stage of the case.

## BACKGROUND[1]

**I.   The Accident**

On April 14, 2015, Plaintiff visited a Menard store in Dolton, Illinois to buy a shelving unit. After selecting the unit, he carried it down a main aisle toward the cash registers. The unit was in "a large box" measuring "about four feet tall and three feet wide," and was "awkward to carry." (Doc. 34-1, ¶ 12) He carried the box against his chest with one arm above the box and the other arm below it, and the box was "even" with his head and "just off to the left." (Doc. 34-6, ¶¶ 20-21). It "partially blocked" his vision. (Doc. 34-1, ¶ 1). Situated in the main aisle that Plaintiff walked down, near the cash registers, was a "pallet jack" -- a tool used to move pallets within the store. The pallet jack had a yellow-colored base and tines, and a black-colored handle that was over four feet tall. The pallet on this jack was 48 inches by 32 to 36 inches. (Doc. 34-6, ¶¶ 5-8).

As depicted in a videotape of the incident, Plaintiff walked directly toward the pallet jack while carrying the large box; however, just before he reached the jack, Plaintiff stepped around it on the right side and proceeded to the cash registers. Plaintiff states that "he was vaguely or subconsciously aware of an object in [his] path which he moved around. He did not know specifically what the object was." (Doc. 34-1, ¶ 3; Doc. 34-3, ¶ 2; Doc. 34-6, ¶¶ 14-15).

---

[1]   Unless indicated otherwise, the following facts are taken from the parties' Local Rule ("L.R.") 56.1 statements (Docs. 32, 34-1, and 34-6) and three videotapes containing footage from store surveillance cameras between 3:56 p.m. and 4:03 p.m. on the day of the accident. (CD06947-15-01 Dolton, CD06947-15-02 Dolton, and CD06947-15-03 Dolton). Where the parties disagree over relevant facts, the Court presents each side's position, but construes all evidence and draws all reasonable inferences in Plaintiff's favor, as required on a motion for summary judgment. *Malen v. MTD Prods., Inc.*, 628 F.3d 296, 303 (7th Cir. 2010).

After getting in line at the cash register, Plaintiff saw a shorter line at a different cash register so decided to go to that line. (Doc. 34-1, ¶ 4). As he walked back into the aisle to get to the second cash register, Plaintiff walked directly toward the same pallet jack. As before, Plaintiff was carrying the boxed shelving unit such that the box blocked his vision "some," and he could not see the floor. (Doc. 34-6, ¶ 22). He "was not aware of any obstacle in his path." (Doc. 34-1 ¶ 6). This time, however, Plaintiff walked into the pallet jack, causing him to fall hard on the floor with the large box on top of him. (*Id.* at ¶ 7). Based on the videotape, this accident occurred at 3:57:54 p.m. Two Menard employees, one of whom was the general manager, picked Plaintiff up and helped him to his feet. (*Id.* at ¶ 8). Plaintiff did not know "what had tripped him up…until after he had fallen [and] was helped to his feet" by the employees. (*Id.*). Plaintiff then proceeded to the checkout register. After paying for the item, he left the store while carrying the large box horizontally such that the top of the box was no longer even with his head. (Doc. 34-6, at 8-9; CD06947-15-03, at 4:00:13 to 4:00:17; Doc. 32-6).[2]

## II. The Store Policy

At the time of the accident, Menard had a "Stocking Cart Program – Policy & Procedure # 173," regarding the manner in which all freight "must be handled." (Doc. 34-3, at 17). That policy included the following instructions, among others:

- Palletized freight will not be left on the sales floor after 9am unless a Team Member is actively working on stocking the freight. The sales floor must be kept clean to provide a great shopping environment for our Guests.

---

[2] Consistent with the videotape, the parties appear to agree that the box was "no longer" even with Plaintiff's head when he exited the store, but both Menard's L.R. 56.1 statement and Plaintiff's response to it omit the word "no" from the phrase "no longer" in this recited fact. (Doc. 32, ¶ 31; Doc. 34-6, ¶ 31). The typo is of no consequence, however, since the video demonstrates that the box was no longer even with Plaintiff's head as he was exiting the store. (CD06947-15-03, at 4:00:13 to 4:00:17; Doc. 32-6).

- Palletized freight not being worked on should not be left in the aisles. This will allow Guests to safely shop the store."

(Doc. Doc. 34-1, ¶ 9, citing Doc. 34-3, at 17, 21-22). As discussed in more detail later, the parties disagree both as to whether the policy was applicable here and whether it was violated. What is not in dispute are the underlying facts concerning the movement of the pallet jack and the Menard employee working with it around the time of the accident, depicted as follows in a videotape (CD06947-15-01):

- 3:56:32: an unidentified Menard employee enters the main aisle of the store with the pallet jack bearing a pallet. He places the jack roughly in the middle of the aisle, leaving open space to each side, with more open space on the right side than the left.

- 3:56:34: the unidentified employee begins removing items (presumably cases of water) from the pallet jack and places them nearby. He removes items from the pallet jack four times, the last of which is removed at 3:57:15.

- 3:57:27: Plaintiff walks around the pallet jack on his way to the cash registers.

- 3:57:54: Plaintiff collides with the pallet jack.

- During the 27 seconds between the time Plaintiff first walks around the pallet jack to when he collides with it, the unidentified employee is seen moving in the same area where he had placed items previously taken from the pallet jack.

- 3:57:56 to 3:58:11: After Plaintiff collides with the pallet jack, the jack rolls to the left side of the main aisle, after which an unknown individual turns the pallet jack and places it partially in a side aisle to the left of the main aisle.

## **DISCUSSION**

It is axiomatic that summary judgment may be granted only when there are no disputed issues of material fact and judgment may be rendered as a matter of law. Fed. R. Civ. P. 56(a). To recover on a negligence claim such as Plaintiff's, Illinois law requires a plaintiff to establish three elements: (1) the defendant owed the plaintiff a duty of care, (2) the defendant breached that duty, and (3) the defendant's breach was the proximate cause of the plaintiff's injury. *Bruns v. City of Centralia*, 2014 IL 116998, ¶ 12, 21 N.E.3d

4

684, 688-89.[3]  Here, Menard focuses on the first and third elements of Scott's negligence claim, asserting that the claim fails as a matter of law because the undisputed facts demonstrate that:  (1) the pallet and pallet jack were an "open and obvious" condition from which Menard had no duty to protect Plaintiff; and (2) the pallet and pallet jack were not the proximate cause of Plaintiff's accident and resulting injuries.  (Doc. 31, ¶¶ 3-4; Doc. 33, at 5-11).  For reasons discussed below, the Court is unable to conclude as a matter of law at this stage of the litigation that Menard owed no duty to Plaintiff, and further, Menard's arguments on both elements raise disputed factual issues that also require denial of its motion.

I. **Duty of Care**

Illinois law squarely holds that the existence of a duty of care is a question of law for the court to decide.  *Bruns*, 2014 IL 116998, at ¶ 13, 21 N.E.3d at 689.  To answer that question, a court must consider "whether defendant and plaintiff stood in such a relationship to one another that the law imposed upon defendant an obligation of reasonable conduct for the benefit of plaintiff."  *Id.* at ¶ 14, 21 N.E.3d at 689 (citing *Ward v. K Mart Corp.*, 136 Ill. 2d 132, 140, 554 N.E.3d 223, 226 (1990)).  This inquiry is guided by four factors: "(1) the reasonable foreseeability of the injury, (2) the likelihood of the injury, (3) the magnitude of the burden of guarding against the injury, and (4) the consequences of placing that burden on the defendant."  *Id.* at ¶ 14, 21 N.E.3d at 689.

---

[3]  In a diversity case such as this, where both sides agree that Illinois law governs the plaintiff's claim, the Court must apply Illinois law.  *Blood v. VH-1 Music First*, 668 F.3d 543, 546 (7th Cir. 2012).  In so doing, the Court must use its "best judgment to estimate how the Illinois Supreme Court would rule" on the issues raised; and to the extent the Illinois Supreme Court has not spoken directly to an issue, the Court may give "proper regard" to the State's lower courts. *Id.* (quoting *Valerio v. Home Ins. Co.*, 80 F.3d 226, 228 (7th Cir. 1996) (brackets omitted)).

### A. Duty of Care Factors 1 and 2: Open and Obvious Rule

The "open and obvious" rule on which Menard relies in support of its motion for summary judgment affects the first two of the duty of care factors – the foreseeability and likelihood of the injury. *Id.* at ¶ 19, 21 N.E.3d at 690. Although landowners generally owe invitees a duty of reasonable care, when the injury-causing-condition was "open and obvious," the foreseeability of harm caused by the condition and the likelihood of resulting injury "will be slight," thus "weighing against the imposition of a duty." *Id.*[4] "Whether a condition is open and obvious depends not on subjective knowledge but on the objective knowledge of a reasonable person confronted with the same condition." *Perez v. Heffron*, 2016 IL App (2d) 160015, ¶ 12, 63 N.E.3d 998, 1002. A condition is thus open and obvious "where a reasonable person exercising ordinary perception, intelligence, and judgment would recognize both the condition and the risk involved." *Id.* Accordingly, although the issue of whether a condition is open and obvious may in some instances present issues of fact, the issue may be resolved as a matter of law where "no dispute exists as to the physical nature of the condition." *Bruns*, 2014 IL 116998, ¶ 18, 21 N.E.3d at 690.

Menard contends that the pallet and pallet jack involved in Plaintiff's fall were an open and obvious condition, the pallet being at least 48 inches by 32 inches, and the pallet jack being black and yellow with a handle over four feet tall. (Doc. 34-6, at 3-4).

---

[4] Where the open and obvious rule applies, and the foreseeability and likelihood of harm factors therefore weigh against imposition of a duty, the remaining two factors in the duty analysis – the burden and consequences of imposing a duty on the defendant – typically weigh against the imposition of a duty as well, or at least fail to "counterbalance" the first two factors guiding toward that result. *See Bujnowski v. Birchland, Inc.*, 2015 IL App (2d) 140578, ¶¶ 46, 55, 37 N.E.3d 385, 395-97 (2015).

It notes that the jack was in the middle of the store's main (and white) aisle by the checkout registers where it could be seen by customers from all angles and dozens of feet away. (Doc. 33, at 5). Moreover, Menard argues that Plaintiff "curved his route in order to walk around this pallet jack approximately 28 seconds before tripping over" it. *Id.* at 6. Under these circumstances, Menard concludes that there is "no genuine issue of material fact as to whether a reasonable person in the plaintiff's position exercising ordinary perception, intelligence, and judgment would have noticed and avoided the pallet jack." *Id.*

### B. Distraction Exception to Open and Obvious Rule

Plaintiff does not dispute that the condition he confronted at the Menard store was open and obvious; in fact, he complains that the pallet jack was "in the middle of the shopping aisle." (Doc. 34, at 2). Instead, Plaintiff invokes the distraction exception to the open and obvious rule, asserting that the rule is not applicable here because he was distracted by the large and bulky package that he was carrying. "The distraction exception applies 'where the possessor of land has reason to expect that the invitee's attention may be distracted, so that he will not discover what is obvious, or will forget what he has discovered, or fail to protect himself against it.'" *Bruns*, 2014 IL 116998, ¶ 20, 21 N.E.3d at 691 (quoting *Sollami v. Eaton*, 201 Ill. 2d 1, 15, 772 N.E.2d 215, 223 (2002) (brackets omitted)). The exception thus requires a "reasonably foreseeable" distraction; and "courts will only find a distraction to be foreseeable if there are special circumstances of which a reasonable landowner would be aware that would cause people to be distracted at the site of plaintiff's accident, as opposed to the world at large." *Negron v. City of Chicago*, 2016 IL App (1st) 143432, ¶¶ 17-18, 55 N.E.3d 109, 113-14. Given this foreseeability requirement, a defendant's "responsibility" for the distraction is "highly

7

relevant" (though "not explicitly required") in determining whether the distraction exception applies, since a defendant "that either creates or contributes to a distraction will typically have reason to know it exists." *Id.* at ¶ 20, 55 N.E.3d at 114-15. "Conversely, where a defendant bears no responsibility for a distraction, courts frequently find that the defendant could not reasonably have foreseen it." *Id.*

Where the asserted distraction was foreseeable and the exception is held to apply, the impact of the open and obvious rule upon the first two factors of the duty of care analysis is "reversed." *Bruns*, 2014 IL 116998, ¶ 20, 21 N.E.3d at 691. In other words, whereas the open and obvious rule "negatively impacts" the first two factors of the duty analysis (regarding foreseeability and likelihood of injury), thus weighing against the imposition of a duty, the distraction exception reverses that result and "positively impacts" those two factors, thus weighing in favor of imposing a duty on the defendant. *Id.*

### 1. *Ward v. K Mart*

Plaintiff relies heavily on *Ward v. K-Mart* as precedent for invoking the distraction exception here, noting that there is an "uncanny similarity between the facts of Ward and those of the instant case." (Doc. 34, at 6-9). In *Ward*, the Illinois Supreme Court held that it was reasonably foreseeable to a store that sells "large, bulky items" that one of its customers could be distracted by carrying such an item and fail to notice an open and obvious obstacle in his path, namely, a post located immediately outside the store entrance. *Ward*, 136 Ill. 2d at 154, 554 N.E.2d at 233 (it was "reasonably foreseeable that a customer carrying a large item he had purchased in the store might be distracted and fail to see the post upon exiting through the door."). Plaintiff argues from the holding in *Ward* that the foreseeability and likelihood of injury factors in the four factor duty-of-care analysis weigh in favor of imposing a duty upon Menard to protect customers whose

8

attention is diverted from an open and obvious danger because they are carrying the large merchandize that Menard sells.

Menard disagrees. It argues that *Ward's* limited holding hinged on facts not present here. Menard reasons that while the court acknowledged the foreseeability of a customer being distracted by carrying "large or bulky merchandise," the decision rested on the location of the post involved in the plaintiff's accident which was immediately outside the store exit. In contrast, the pallet jack involved here was located in a main aisle where Plaintiff had "ample opportunity" to see it on his way to the cash registers. (Doc. 35, at 2-4). But as several decisions have observed, *Ward* did not rely merely on the location of the post in holding that the distraction exception applied; it also recognized generally that a store that sells large, packaged goods has reason to foresee that a customer may be distracted by carrying such a "vision-obscuring bundle" from seeing an open and obvious obstacle in his path. *Ward*, 136 Ill. 2d at 153, 554 N.E.2d at 232 ("We may well have arrived at a different conclusion if the post would have been located further away from the entrance of the building, *or if the plaintiff would not have been carrying any vision-obscuring bundle.*") (emphasis added).[5] That principle applies equally here, regardless of whether the obstacle at issue was located immediately outside a store exit

---

[5] *See also Bruns*, 2014 IL 116998, at ¶ 24, 21 N.E.3d at 692 (*Ward* "held that the distraction exception applied because the defendant should have anticipated that a customer, even in the exercise of reasonable care, would become distracted by carrying a large bulky item from the store."); *Negron*, 2016 IL App (1st) 143432, at ¶ 18, 55 N.E.2d at 114 (discussing *Ward*: "at a department store that sold bulky merchandise, it was foreseeable that shoppers might carry such merchandise in front of their faces and therefore fail to notice and avoid a large post located directly outside the store's exit"); *True v. Greenwood Manor West, Inc.*, 316 Ill. App. 3d 676, 680, 737 N.E.2d 673, 676 (4th Dist. 2000) (discussing *Ward*: "it was reasonably foreseeable that a customer would collide with a concrete post while exiting the defendant's store carrying a large item that could obscure his view of the post"); *Fearheiley v. Summers*, 246 Ill. App. 3d 86, 92, 614 N.E.2d 1377, 1381 (5th Dist. 1993) (*Ward* "found that it was reasonably foreseeable that a customer would collide with the post while carrying merchandise which could obscure his vision.").

or in some other area that customers are expected to navigate. And like the obstructed store exit in *Ward*, there is no dispute here that the pallet jack was similarly located in a path that Menard expected its customers to use – "the store's main aisle by the checkout registers." (Doc. 33, at 5).

### 2. Plaintiff's Awareness of the Pallet Jack

Regardless of the placement of the pallet jack or the size of the package Plaintiff was carrying, Menard argues that Plaintiff is foreclosed from relying on the distraction exception because he was already "aware of [the pallet jack's] presence," having avoided it just 28 seconds earlier. (Doc. 33, at 6-8). But while the distraction exception requires evidence from which a court can infer that the plaintiff "was actually distracted" from the dangerous condition that caused his injury, *Bruns*, 2014 IL 116998, at ¶ 22, 21 N.E.3d at 691, there is such evidence here. Plaintiff's affidavit attests that he was only "vaguely or subconsciously aware" of an object in his path when he walked to the first register, his vision was "partially blocked" by the large package he was carrying as he walked to the second register, and he "was not aware of any obstacle" in his path when he fell. (Doc. 34-3, ¶¶ 2-4). Accordingly, whether Plaintiff was aware of the pallet jack before or at the time of his injury are disputed issues of fact that may not be resolved against him on summary judgment.[6]

---

[6] Menard complains that Plaintiff's affidavit statement that he was only "vaguely or subconsciously aware" of an object in his path when he walked to the first register is "contrary" to his prior deposition testimony that he did not see the pallet on the floor when he first passed it. (Doc. 35, at 2 n.1). Menard therefore asks the Court to strike this statement from Plaintiff's affidavit in the event the Court views it material. (*Id.*). But the Seventh Circuit has cautioned that "summary judgment is not a tool for deciding questions of credibility," and thus, affidavit statements may be stricken as inconsistent with prior deposition testimony only when they present "clear" contradictions designed to create a "sham" issue, as opposed to mere corrections or clarifications of the earlier testimony. *Castro v. DeVry Univ., Inc.*, 786 F.3d 559, 571-72 (7th Cir. 2015). Plaintiff's affidavit presents no such "sham" issues. His prior deposition testimony (which Menard does not cite) stated that Plaintiff did not see the pallet on the floor because he

In any event, Illinois cases repeatedly recognize that the distraction exception applies even where the plaintiff was previously aware of the injury-causing condition, so long as a foreseeable distraction caused him to "forget what he has discovered, or fail to protect himself against it." *Bruns*, 2014 IL 116998, at ¶ 20, 21 N.E.3d at 691.[7] Indeed, even Menard acknowledges that *Ward* itself involved a plaintiff who admitted having seen the injury-causing condition (the post outside the store exit) about a half hour before he collided with it. (Doc. 35, at 3). And while Menard is correct that a half hour is decidedly longer than 28 seconds (*id.*), Illinois cases set no minimum time period for a plaintiff to forget "momentarily" about an injury causing condition. *See supra* note 7.[8]

---

was unable to see the floor due to the box he was carrying (Doc. 32-3, at 25-26); and he now explains that he was nevertheless "vaguely or subconsciously aware of an object in his path which he "moved around," although he did not know what the object was. (Doc. 34-3, at ¶ 2). As Menard has directed the Court to no deposition testimony where Plaintiff clearly said the opposite, the Court views his affidavit as a mere clarification of his deposition testimony, and therefore unsuitable to strike under *Castro*. As importantly, and as next explained, whether Plaintiff saw or was aware of the pallet jack before he fell is not dispositive of the distraction exception under Illinois law, and therefore not material to Menard's motion on that ground.

[7] *See, e.g.*, *Allen v. Schneider Logistics, Inc.*, No. 11 CV 7574, 2014 WL 1884318, at *5 (N.D. Ill. May 12, 2014) ("Although Plaintiff knew of the gap's existence, he momentarily lost sight of it due to the large box that Defendant knew he would be carrying proximate to the gap."); *Buchanan v. Whole Foods Market Group, Inc.*, No. 07 C 4189, 2009 WL 1514655, at *7 (N.D. Ill. May 27, 2009) (citing cases where the distraction exception applied, even though the plaintiffs "had seen the hazards prior to being injured by them") (citing *Ward* and *Rexroad v. City of Springfield*, 207 Ill. 2d 33, 46, 796 N.E.2d 1040, 1047 (2003) ("It was reasonably foreseeable that students may fail to avoid the risk posed by the hole by becoming distracted or momentarily forgetful")); *Ward*, 136 Ill. 2d at 155, 554 N.E.2d at 233-34 ("defendant can be expected under certain circumstances to anticipate that customers even in the general exercise of reasonable care will be distracted or momentarily forgetful").

[8] *See also Figas v. Aldi, Inc.*, No. 1-15-1117, 2015 IL App (1st) 151117-U, at ¶ 13 (unpublished), where the court applied the distraction exception, even though the plaintiff was seen on surveillance video navigating around the empty freight pallets at issue on the store aisle floor moments before she tripped over them. *Id.* ("it is reasonably foreseeable that a customer pushing a shopping cart down a grocery store aisle might momentarily forget the presence of an otherwise obvious obstruction in the aisle [empty pallets on the floor] when maneuvering her cart around other customers or that she might become distracted when doing so"). Although *Figas* is unpublished and therefore not precedential, this Court may (and does) consider it persuasive. *See Zahn v. N. Am. Power & Gas, LLC*, 815 F.3d 1082, 1093 (7th Cir. 2016) (although not precedential, unpublished Illinois decisions may be cited for their "reasoning and logic").

11

### 3. Store Policy

Plaintiff points to Menard's store policy as further support for his position that the distraction exception applies here. As noted, Menard's policy prohibited palletized freight from being left on the sales floor after 9 a.m. unless a Team Member was "actively working" on stocking it, and said "[p]alletized freight not being worked on should not be left in the aisles. This will allow Guests to safely shop the store." (Doc. 34-3, at 17, 21-22). Plaintiff argues that this policy gives rise to an inference in his favor that Menard had reason to expect that its customers carrying large, bulky items were in danger of colliding with a pallet jack left in the middle of a shopping aisle. (Doc. 34, at 5). Menard counters that the policy did not apply here, was not violated in any event, and constitutes no evidence of negligence even if it did apply and was violated. (Doc. 35, at 4-5). But here again, the parties' arguments raise disputed issues of fact.

For his part, Plaintiff maintains that the policy was violated because "the pallet on the pallet jack was empty, yet it was still in the middle of the aisle and as the incident occurred at about 4pm, after the 9am injunction." (Doc. 34, at 5 n.1). But Menard contends that the policy was inapplicable, relying on deposition testimony of the store manager that this policy applies only to pallets on the sales floor (not pallets on pallet jacks), because a pallet is a smaller object that might not be seen, whereas "you have the whole arm of the pallet jack sticking up at least four feet, so it's hard to miss that as opposed to seeing something that's below the knees." (Doc. 35, at 4; Doc. 32-4, at 23, 25-26).

Even if the policy did apply, Menard disputes that it was violated because the policy allows pallets on the sales floor after 9 a.m. where "a team member is actively working on stocking freight," and "the pallet of freight in question was actively being worked at the

12

time of this incident as seen on surveillance footage." (Doc. 35, at 4). To support this contention, Menard points to footage showing the unidentified employee beginning to unload cases of water near the register just 80 seconds before Plaintiff made contact with the pallet jack and fell. (*Id.*). But even Menard does not dispute that the pallet was empty at the time of Plaintiff's fall (Doc. 32-4, at 7-8); and the Court observes that the employee in question removed no items from the pallet for about 39 seconds before Plaintiff's fall. (CD06947-15-01, at 3:57:15 to 3:57:54). Accordingly, although any time period when the pallet was not "actively being worked" was certainly brief, there remains a disputed issue as to whether the admittedly empty pallet was "actively being worked" at the time of Plaintiff's fall, and correspondingly, whether Menard's policy was violated.

What is more, wholly apart from the issue of whether Menard's policy applied and was violated in this case, Plaintiff maintains that "the existence of these policies alone" entitles him to an inference that Menard had reason to foresee that customers carrying large bulky items may not be able "to safely shop the store" with palletized freight in the middle of a store aisle. (*See* Doc. 34, at 5, quoting Doc. 34-3, at 22). On summary judgment, where the Court is required to construe all evidence and draw all reasonable inferences in Plaintiff's favor, the Court must similarly construe Menard's freight stocking policy in Plaintiff's favor. *See Allen*, 2014 WL 1884318, at *5 (noting that defendant's "own safety handbook" suggested that it "in fact, *did* foresee the danger" that occurred).

In sum, based on the information provided for purposes of considering Menard's motion for summary judgment, the Court concludes that the distraction exception to the "open and obvious" rule applies in this case. Accordingly, solely for purposes of the instant motion, the first two factors of the duty analysis (the foreseeability and likelihood of Plaintiff's injury) weigh in favor of imposing a duty upon Menard.

## C.   Duty of Care Factors 3 and 4

Having concluded that the distraction exception applies to Plaintiff's claim (at least at this stage of the litigation), the determination of whether Menard owed Plaintiff a duty of care hinges on the final two factors of the duty analysis – the magnitude of the burden of guarding against the injury, and the consequences of imposing that burden upon Menard. In so doing, the court must consider all financial and other consequences of imposing a duty on the defendant to guard against the injury at issue, and consider the impact of such a duty on all of the defendant's operations. *Bruns*, 2014 IL 116998, ¶ 37, 21 N.E.3d at 695 (duty to repair sidewalk too burdensome if applied to all city sidewalk).

Menard argues that these factors weigh against imposing a duty of care because to do so would require that Menard "essentially close the registers and not allow any purchase to be made every time product needs to be replenished." (Doc. 33, at 9). According to Menard, such a result would be "unduly burdensome and impractical for Menards," because its customers "expect that when they go to a store like Menard that the products they desire will be continuously available." (*Id.*). But Menard provides insufficient factual and legal support for these assertions, and its own written store policy arguably belies them. As Plaintiff argues (and a jury conceivably could infer), the written policy demonstrates that Menard has already "voluntarily assumed some burden by issuing written mandatory safety policies which are directed at ameliorating the hazard of having a pallet jack on the shop floor when customers are in the store." (Doc. 34, at 8; *see also* Doc. 34-3, at 17: "After the 5 am – 9am stocking hours all freight must go out to the sales floor on a stocking cart. The only exception to this would be a bulk pallet that is actively being worked on by a Team Member"; *see also* policies quoted at pages 3-4 *supra*).

Here again, the Court must construe the facts, including these policies, in Plaintiff's favor on a motion for summary judgment. *Allen*, 2014 WL 1884318, at *5 (construing evidence and drawing reasonable inferences regarding burden in plaintiff's favor). By the same token, wholly apart from its safety policies, Menard's unsupported contention that it would be required to "close the registers" whenever product needs restocking (as opposed to merely locating a pallet, pallet jack, or stocking cart away from customer traffic or taking other measures to minimize the risk to customers) is an inference that may not be drawn against Plaintiff on summary judgment. *Id.* And since Plaintiff "has put forth evidence" that the burden of guarding against the injury that occurred here would be relatively small, and that Menard has already deemed a similar burden acceptable, the Court must conclude at the present stage that the final two factors of the four-factor duty analysis also weigh in favor of imposing such a duty on Menard. *See id.* (denying defendant's motion for summary judgment where plaintiff "put forth evidence" that the burden of guarding against the alleged injury "would be relatively small"). "At trial, the totality of the evidence may point in a different direction, but at summary judgment, the evidence before the Court supports that inference." *Id.*

For these reasons, the Court declines to hold as a matter of law based on the record before it and construed in the light most favorable to Plaintiff, that Menard owed him no duty to guard against the accident and resulting injuries.[9] Of course, "[a]t trial, Plaintiff will have the burden of proving each element of his negligence claim, including

---

[9] *See Sepulveda v. Target Corp.*, No. 14 C 6437, 2017 WL 474418, at *3 (N.D. Ill. Feb. 6, 2017) (applying distraction exception and therefore denying defendant's motion for summary judgment predicated on the "open and obvious" rule: "the Court cannot conclude at this stage that Target did not owe Sepulveda a duty of care"); *Fetzer v. Wal-Mart Stores, Inc.*, No. 13 C 9312, 2016 WL 792296, at *17 (N.D. Ill. March 1, 2016) (same: "Given this authority, the court declines to find, as a matter of law, that Wal-Mart did not expect customers to focus on its merchandise displays while shopping.").

that the relevant factors demonstrate the existence of a duty on the part of [Menard]." *Allen*, 2014 WL 1884318, at *5. Plaintiff will thus need to demonstrate all factual prerequisites of the distraction exception, including that he was "actually distracted" and that such a distraction was "foreseeable" to Menard. *See Belluomini v. Stratford Green Condo. Ass'n*, 346 Ill. App. 3d 687, 695, 805 N.E.2d 701, 708 (2d Dist. 2004) (granting defendant's motion for summary judgment where plaintiff's deposition testimony failed to establish that she was "actually distracted"). The issues of whether additional precautions were required to satisfy any duty of care, and any comparative negligence on Plaintiff's part, are also issues reserved for trial. *Allen*, 2014 WL 1884318, at *5 (reserving comparative negligence issue for trial, even though a plaintiff's negligence "is irrelevant to the threshold issue" of the defendant's duty); *Ward*, 136 Ill. 2d at 156-57, 554 N.E.2d at 234 ("Whether in fact the condition itself served as adequate notice of its presence or whether additional precautions were required to satisfy the defendant's duty are questions properly left to the trier of fact. The trier of fact may also consider whether the plaintiff was in fact guilty of negligence contributing in whole or in part to his injury").

## II.  **Proximate Cause**

Menard's alternative ground for summary judgment is that the undisputed facts demonstrate that its actions or inactions were not a proximate cause of Plaintiff's injury. As the Seventh Circuit has explained, proximate cause has two requirements: (1) "cause in fact," and (2) "legal cause." *VH-1 Music First*, 668 F.3d at 546. Cause in fact requires conduct that was "a material element and a substantial factor in bringing about the injury," and legal cause is essentially "a question of foreseeability," that is, "whether the injury is of a type that a reasonable person would see is a likely result of his or her conduct." (*Id.*).

Menard acknowledges that "proximate cause is ordinarily a question of fact determined by the trier of fact," although it may be determined by the court "when the facts are undisputed and there can be no difference in the judgment of reasonable men as to the inferences to be drawn from them." (Doc. 33, at 11). *See also VH-1 Music First*, 668 F.3d at 546 (proximate cause may be found as a matter of law "when the facts are not only undisputed but are also such that there can be no difference in the judgment of reasonable men as to the inferences to be drawn from them"). This is not such a case. Similar to the argument in support of its "open and obvious" defense, Menard again asserts--now under the rubric of "proximate cause"--that the pallet and pallet jack involved in Plaintiff's fall were "a mere condition of the premises" of which Plaintiff was aware, having "walked around it moments prior to the accident." (Doc. 33, at 11). Thus, because Plaintiff avoided the pallet jack the first time he passed it before the accident, Menard contends that Plaintiff "cannot now reasonably claim that this condition was a proximate cause of the fall." (Doc. 35, at 5-6). Rather, Menard says, "the proximate cause of the fall was the combination of his choice to carry the box vertically rather than (a) carrying it horizontally such that the top of the box was no longer even with his head (which he is later seen doing on the surveillance video while exiting the store at 4:00:18 p.m.) or (b) using some sort of cart to transport the box, along with his obvious failure to watch where he was walking." (*Id.*).

While this defense may succeed at trial, it fails on summary judgment for the reasons already discussed in relation to Menard's "open and obvious" defense. As noted, Plaintiff has submitted an affidavit attesting that he was only "vaguely or subconsciously aware of an object" in his path and "did not know specifically what the

object was" when he initially walked around the pallet jack on his way to the cash registers. (Doc. 34-3, ¶ 2). He further has attested that "his vision was partially blocked by the large package he was carrying" and he "was not aware of any obstacle in his path as he walked to the second register" and collided with the pallet jack. (Doc. 34-1, ¶¶ 6-7, citing Doc. 34-3, ¶ 3). Whether Plaintiff was aware of the pallet or pallet jack before or when he fell are thus disputed. *See supra* note 6. So too is the question of whether Menard's conduct "was a material element and a substantial factor in bringing about the injury" – *i.e.*, by selling the vision-obscuring item that he was carrying, placing the pallet jack in the middle of the main store aisle, and leaving it there when it was empty. (Doc. 34, at 5, n.1). This Court may resolve the issue of proximate cause as a matter of law only "when the facts are not only undisputed but are also such that there can be no difference in the judgment of reasonable men as to the inferences to be drawn from them." *VH-1 Music First*, 668 F.3d at 546. The facts regarding the proximate cause of Plaintiff's accident, however, are both disputed and subject to reasonable disagreement.

Accordingly, the proximate cause of Plaintiff's accident may not be decided by the Court on summary judgment, and is reserved for trial along with the remaining facts relating to the other elements of Plaintiff's negligence claim. Again, this ruling says nothing of whether Menard was negligent, or whether it owed or breached any duty toward Plaintiff. Although Illinois case law requires Plaintiff's negligence claim to go to a jury, that jury may well conclude that a plaintiff who opts to carry such a large package in his arms rather than place it in a cart, and even then avoids an open and obvious obstacle in the store aisle but seconds later carries the package so as to obstruct his view from it, caused his own collision with it. In any event, that question is for a jury to decide.

## **CONCLUSION**

For the foregoing reasons, Defendant Menard Inc.'s Motion for Summary Judgment (Doc. 31) is denied. A status hearing is set for August 31 2017, at 10:00 a.m., to discuss dates for filing the various components of a final pretrial order, a final pretrial conference, and trial.

ENTER:

Dated: August 9, 2017

_____
SHEILA FINNEGAN
United States Magistrate Judge